UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **John R. Wooden,** | : |
| **Plaintiff,** | : **13    3498** |
| v. | : Civil Action No. 13-cv- |
| **Pennsylvania Liquor Control Board,** | : Jury Trial Demanded |
| **Defendant.** | : |

## COMPLAINT

Plaintiff, John R. Wooden, by and through his attorney, brings this action seeking relief from the employment discrimination of Defendant, Pennsylvania Liquor Control Board, and makes the following allegations:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction to hear this complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, and 2202, this action being brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), through 42 U.S.C. §1983, and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991) to redress and enjoin the discriminatory and retaliatory practices of Defendant. The Court may exercise supplemental jurisdiction under 28 U.S.C. §1367.

2. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(c).

### THE PARTIES

3. Plaintiff, John R. Wooden, is an African-American male citizen of the United States and a resident of this judicial district. He was employed by Defendant as a Licensing Analyst 2B until January 12, 2012, when his employment was terminated because of his race.

4. Defendant, Pennsylvania Liquor Control Board, is an instrumentality of the Commonwealth of Pennsylvania and has a principal place of business in Philadelphia, Pennsylvania. At all times relevant to this case, the Defendant employed over 500 persons. The acts set forth in this Complaint were authorized, ordered, condoned and/or done by defendant's officers, agents, employees and/or representatives while actively engaged in the management of defendant's business.

### *Background Facts*

5. Wooden, was employed by the Defendant as a Licensing Analyst 2B, regular status employment.

6. A Licensing Analyst 2B is responsible for performing assigned investigations and compliance audits in accordance with the rules and regulations of the Defendant and the established quality control guidelines.

7. A Licensing Analyst 2B is also responsible for composing accurate and complete detailed reports of investigation.

8. Further, a Licensing Analyst 2B is expected to perform his duties with minimum supervision and control and to use discretion and independent judgment. A Licensing Analyst 2B is also expected to ascertain facts and verify information with minimum supervision.

9. Effective January 12, 2012, Wooden was terminated by the Defendant from his position as a Licensing Analyst 2B.

10. Wooden was terminated allegedly for unsatisfactory work performance and falsification of official documents or records. However, in truth, Wooden was terminated because of his race.

2

11. Prior to terminating Wooden, the Defendant imposed on him three (3) action plans, each spanning ninety (90) days, allegedly to address aspects of Wooden's performance that were below expectation. After the completion of each action plan, however, Defendant took unjustified and unwarranted disciplinary action against Wooden that was motivated by his race.

12 Wooden reviewed and signed the first two (2) action plans, but refused to sign the third action plan.

13. Quality Control Guidelines were attached to each action plan. The Quality Control Guidelines set forth the time frame for conducting each type of investigation, expectations regarding the examination of applications, filed interviews, and submitting reports, and standards for measuring employee performance.

14. From February 28, 2011 through May 30, 2011, the first of the three (3) action plans was instituted.

15. During the first action plan, Wooden's supervisor, William Oleszek ("Oleszek") met with Wooden at the beginning of each week to review the status of Wooden's investigations. During these weekly meeting, Oleszek allegedly attempted to determine what was causing the delay in the submission of Wooden's work. Oleszek believed that Wooden was unable to manage his time.

16. Oleszek identified jobs approaching the Quality Control Deadlines and discussed those jobs with Wooden.

17. At the conclusion of the first action plan, Wooden's performance was reviewed. Oleszek reviewed Wooden's assigned investigations from February 28, 2011 through May 30, 2011, and claimed that Wooden had failed to meet the Quality Control Guidelines on eight (8) assignments.

18. However, Oleszek never determined whether Wooden's percentage compliance with the Quality Control Guidelines was consistent with the percentage compliance of Oleszek's non-Black subordinates.

19. On May 27, 2011, Wooden received an Employee Performance Review regarding his performance during the first action plan. His overall performance rating was unsatisfactory.

20. Wooden's performance during the first action plan did not warrant or justify the unsatisfactory performance rating.

21. The unsatisfactory performance rating given to Wooden after the first action plan was motivated by his race.

22. On June 10, 2011, without justification, Defendant disciplined Wooden for allegedly having engaged in continued insubordination and for unsatisfactory work performance. Defendant issued Wooden the level two (2) letter, but stated that it would have the same effect as if he had been issued and served a three (3) day suspension.

23. Wooden's performance did not warrant or justify the June 10, 2011 discipline.

24. The June 10, 2011 discipline issued to Wooden was motivated by his race.

25. Despite no knowledge of how Wooden's performance compared to his non-Black peers, and because Wooden allegedly did not provide any feedback during his weekly meetings with Oleszek, Defendant imposed a second action plan on Wooden.

26. The second action plan spanned from May 31, 2011 through August 31, 2011.

27. During the second action plan, Oleszek manifested his intent to unjustifiably terminate Wooden by meeting with him only biweekly.

28. At the conclusion of the second action plan, Wooden's performance was reviewed.

4

29. Oleszek reviewed Wooden's assigned investigations from June 1, 2011 through August 31 2011, and claimed that thirty-eight percent (38%) of Wooden's work did not meet the Quality Control Guidelines.

30. Again, however, Oleszek did not compare Wooden's percentage compliance with the Quality Control Guidelines to the percentage compliance with the Quality Control Guidelines of his non-Black

31. On August 31, 2011, Wooden received an Employee Performance Review regarding his performance during the second action plan. His overall performance rating was unsatisfactory.

32. Wooden's performance during the second action plan did not warrant or justify the unsatisfactory performance rating.

33. The unsatisfactory performance rating given to Wooden after the second action plan was motivated by his race.

34. On September 29, 2011, without justification, Defendant disciplined Wooden for allegedly having engaged in continued unsatisfactory work performance during the second action plan. Defendant issued Wooden the level two (2) letter, but stated that it would have the same effect as if he had been issued and served a three (3) day suspension.

35. Wooden's performance during the second action plan did not warrant or justify the September 29, 2011 discipline.

36. The September 29, 2011 discipline issued to Wooden was motivated by his race.

37. Defendant imposed a third action plan on Wooden allegedly because he did not show any improvement during the second action plan.

5

38. The third action plan spanned from September 23, 2011 through December 22, 2011.

39. At the conclusion of the third action plan, Wooden's performance was reviewed.

40. Oleszek reviewed Wooden's assigned investigations from September 23, 2011 through December 22, 2011, and claimed that approximately sixty two percent (62%) of his work did not meet the Quality Control Guidelines.

41. Again, however, Oleszek never determined whether Wooden's percentage compliance with the Quality Control Guidelines was consistent with the percentage compliance of Oleszek's non-Black subordinates.

42. During the third action plan, Defendant charged that Wooden falsified a sketch of the premises for Valley Forge Promotions, Ltd. by claiming that the sketch depicted the licensed premises as completed, when in fact it was then under construction.

43. Defendant also claimed that Wooden had moved the placard that the applicant was required to post on the premises behind a tinted glass window. Defendant claimed that moving the placard behind a tinted glass window where it was not visible to the passing public meant that the placard was not properly posted. Therefore, Defendant claimed that Wooden's statement that the placard was properly posted was false.

44. On December 29, 2011, Defendant notified Wooden by letter that he was required to attend a Pre-Disciplinary Conference on January 5, 2012 related to four (4) charges: a) unsatisfactory work performance during the third action plan; b) two (2) instances of falsifying documents; c) driving a state vehicle on a suspended driver's license; and d) violation of Defendant's policies on sexual harassment.

45. There was no justification for any of the four (4) charges alleged in the December 29, 2011 letter. The requirement that Wooden attend a Pre-Hearing Disciplinary Conference was motivated by his race.

46. On January 4, 2012, Wooden received an Employee Performance Review regarding his performance during the third action plan. His overall performance rating was unsatisfactory.

47. Wooden's performance during the third action plan did not warrant or justify the unsatisfactory performance rating.

48. The unsatisfactory performance rating given to Wooden after the third action plan was motivated by his race.

49. The Pre-Disciplinary Conference occurred on January 5, 2012. At the conference, in addition to the charges set forth in the December 29, 2011 letter, Wooden's prior disciplinary history was reviewed, which included the following: a) On September 8, 2010, Wooden was issued a level one (1) letter for insubordination and unsatisfactory work performance; b) On April 6, 2011, Wooden was issued a level one (1) letter for making an inappropriate remark of a sexual nature and undependability; c) On June 10, 2011, Wooden was issued a level two (2) letter or discipline for insubordination alleging that he had failed to comply with specific instructions from supervisory personnel to respond to an e-mail regarding his Commonwealth assigned vehicle and that he had failed to meet the performance standards set forth in the first action plan; d) On August 10, 2011, Wooden was issued a level two (2) letter for continued undependability alleging that he was tardy on July 14, 2011 and July 29, 2011; and e) On September 29, 2011, Wooden received a level two (2) letter of discipline for unsatisfactory work

performance alleging that he failed to meet the performance standards set forth in the second action plan

50. By letter, dated January 12, 2012, Defendant terminated Wooden from his Licensing Analyst 2B position, effective January 12, 2012.

51. Wooden's termination was racially discriminatory.

52. The actions of Wooden's superiors were intentional, malicious, and in reckless disregard of his right to be free from discrimination and retaliation.

53. As a direct and proximate result of defendant's actions and omissions, Wooden suffered loss of income, loss of professional opportunities, embarrassment, humiliation, anxiety and mental anguish.

### *Count I*

*The Civil Rights Act of 1866, 42 U.S.C. § 1981*

54. Plaintiff restates and realleges paragraphs 1- 53, inclusive, as though set forth here in full.

55. Defendant discriminated and retaliated against Wooden by denying him the same rights as enjoyed by White employees with respect to the terms and conditions of their employment relationship with defendant and to the enjoyment of all benefits, privileges, terms and conditions of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended.

56. Defendant's conduct was intentional, deliberate, willful and in callous disregard of Wooden's rights.

57. By reason of defendant's discrimination and retaliation, Wooden is entitled to all legal and equitable remedies available under Section 1981, including but not limited to damages for mental anguish and punitive damages.

## *Count II*

*The Pennsylvania Human Relations Act, 43 P.S. §§ 951 - 963*

58. Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-57, inclusive, of this Complaint.

59. Defendant discriminated against Wooden because of his race with respect to the terms and conditions of his employment relationship with defendant in violation of the Pennsylvania Human Relations Act.

60. By reason of defendant's discrimination, Wooden is entitled to all legal and equitable remedies available under the Pennsylvania Human Relations Act, including, but not limited to, damages for mental anguish and emotional distress.

## *Jury Demand*

61. Plaintiff hereby demands a trial by jury as to all issues so triable.

## *Prayer for Relief*

WHEREFORE, Plaintiff, John Wooden, respectfully prays that this Court:

a. adjudge, decree and declare that defendant has engaged in illegal race discrimination and retaliation against him and that the practices of defendant complained of herein are violative of his rights;

b. issue a permanent prohibitory injunction prohibiting defendant and its officers, agents, employees, and successors from engaging in any further unlawful practices, policies, or customs of discrimination and retaliation complained of herein;

c.order defendant to reinstate Wooden;

d.enter judgment in favor of Wooden and against defendant for all available remedies and damages under law and equity, including, but not limited to, back pay, front pay, and past and future mental anguish and pain and suffering in amounts to be determined at trial;

e.order defendant to pay punitive damages to Wooden in an amount to be determined at trial;

f.order defendant to pay the attorney's fees, costs and expenses and expert witness fees of Wooden associated with this action;

g.grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

h.retain jurisdiction until such time as the Court is satisfied that defendant has remedied the unlawful and illegal practices complained of herein and is determined to be in full compliance with the law.

Robert T Vance Jr (RTV3988)
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 910
Philadelphia PA 19110
215 557 9550 tel
215 278 7992 fax
rvance@vancelf.com

*Attorney for John Wooden*